# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| JIMMY PENNEY, <br><br> Plaintiff, <br><br> vs. <br><br> NANCY A. BERRYHILL, <br> Acting Commissioner of Social Security, <br><br> Defendant. | No. 16-CV-2097-LRR <br><br><br> **REPORT AND RECOMMENDATION** |

_____

The claimant, Jimmy Penney (claimant), seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying his application for disability insurance benefits (DIB) and Supplemental Security Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 *et seq*. (Act). Claimant contends that the Administrative Law Judge (ALJ) erred in determining that he was not disabled.

For the reasons that follow, I recommend the District Court affirm the Commissioner's decision.

## *I.    BACKGROUND*

I adopt the facts as set forth in the parties' Joint Statement of Facts and therefore only summarize the pertinent facts here. (Doc. 15). Claimant was born in 1968 and therefore was 44 years old on the date of the alleged onset of disability and 46 years old

at the time of the ALJ's decision.  (AR 23, 34).[1]  He has a high school education.  (*Id*.).  Claimant has past relevant work as a welder, roofer, and material handler.  (AR 22).

On August 20, 2013, claimant protectively filed an application for disability benefits alleging a disability onset date of May 1, 2013.  (AR 192-96).  Claimant asserted he was disabled due to cervical spondylosis[2] with myelopathy[3] and lateral epicondylitis.[4]  (AR 270).

The Social Security Administration denied claimant's disability application initially and on reconsideration.  (AR 113-17, 119-23).  Claimant filed a request for a hearing before an ALJ.  (AR 124).  On May 12, 2015, ALJ Eric Basse conducted a hearing at which claimant and a vocational expert testified.  (AR 33-56).  On July 31, 2015, the ALJ found claimant was not disabled.  (AR 13-2).  On June 23, 2016, the Appeals Council affirmed the ALJ's finding.  (AR 1-5).  The ALJ's decision, thus, became the final decision of the Commissioner.  20 C.F.R. § 404.981.

On August 17, 2016, claimant filed a complaint in this Court.  (Doc. 4).  In February and March 2017, the parties briefed the issues.  (Docs. 16-18).  On March 27, 2017, the Court deemed this case fully submitted and ready for decision.  (Doc. 19).  On the same day, the Honorable Linda R. Reade, United States District Court Judge, referred this case to a United States Magistrate Judge for a Report and Recommendation.

---

[1] "AR" refers to the administrative record below.

[2] Spondylosis simply refers to spinal degeneration.

[3] Myelopathy means disease of the spinal cord.

[4] Epicondylitis is a painful inflammation of tendons surrounding an elbow.

2

## II. DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual has a disability when, due to his physical or mental impairments, he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). If the claimant is able to do work which exists in the national economy but is unemployed because of inability to get work, lack of opportunities in the local area, economic conditions, employer hiring practices, or other factors, the ALJ will still find the claimant not disabled.

To determine whether a claimant has a disability within the meaning of the Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. *Kirby v. Astrue*, 500 F.3d 705, 707-08 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. "Substantial" work activity involves physical or mental activities. "Gainful" activity is work done for pay or profit, even if the claimant did not ultimately receive pay or profit.

Second, if the claimant is not engaged in substantial gainful activity, then the Commissioner looks to the severity of the claimant's physical and mental impairments. If the impairments are not severe, then the claimant is not disabled. An impairment is

not severe if it does not significantly limit a claimant's physical or mental ability to perform basic work activities. *Kirby*, 500 F.3d at 707.

The ability to do basic work activities means the ability and aptitude necessary to perform most jobs. These include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); 20 C.F.R. § 404.1521(b).

Third, if the claimant has a severe impairment, then the Commissioner will determine the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled regardless of age, education, and work experience. *Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) and the demands of his past relevant work. If the claimant can still do his past relevant work, then he is considered not disabled. Past relevant work is any work the claimant performed within the past fifteen years of his application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his [ ] physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (citations and internal quotation marks omitted). The

4

RFC is based on all relevant medical and other evidence.  The claimant is responsible for providing the evidence the Commissioner will use to determine the RFC.  *Id.*  If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled.

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show there is other work the claimant can do, given the claimant's RFC, age, education, and work experience.  The Commissioner must show not only that the claimant's RFC will allow her to make the adjustment to other work, but also that other work exists in significant numbers in the national economy.  *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004).  If the claimant can make the adjustment, then the Commissioner will find the claimant not disabled.  At Step Five, the Commissioner has the responsibility of developing the claimant's complete medical history before making a determination about the existence of a disability.  The burden of persuasion to prove disability remains on the claimant.  *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

### III.   THE ALJ'S FINDINGS

The ALJ made the following findings at each step.

At Step One, the ALJ found that claimant had not engaged in substantial gainful activity since May 1, 2013, the alleged onset date.  (AR 14).

At Step Two, the ALJ found that claimant had the severe impairments of "degenerative disc disease status post cervical fusion, and status post left ulnar transposition."  (*Id.*).

At Step Three, the ALJ found that none of claimant's impairments equaled a presumptively disabling impairment listed in the relevant regulations.  (AR 15).

5

At Step Four, the ALJ found claimant had residual functional capacity to perform sedentary work, with following additional functional limitations:

> [C]laimant cannot lift over shoulder level and can perform only frequent lifting in other directions; the claimant can occasionally climb ramps or stairs; the claimant could occasionally balance, stoop, or crouch; the claimant could never kneel or crawl; and the claimant is limited to frequent handling or fingering.

(AR 15). Also at Step Four, the ALJ determined that claimant was unable to perform any past relevant work. (AR 22).

Finally, at Step Five, the ALJ found that, considering claimant's age, education, work experience and residual functional capacity, and based on the opinion of the vocational expert, there were jobs that existed in significant numbers in the national economy claimant could perform. (AR 23). Among those jobs were document preparer, addresser, and bench assembly worker. (AR 24). Therefore, the ALJ found claimant was not disabled. (*Id.*).

## IV. THE SUBSTANTIAL EVIDENCE STANDARD

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645 (citations and internal quotation marks omitted). The Eighth Circuit Court of Appeals explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the

[Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (citations and internal quotation marks omitted).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but we do not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The court considers both evidence that supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (quoting *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817,

822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion" (citation omitted)).

## V. DISCUSSION

Claimant argues that the ALJ erred in failing to properly assess claimant's residual functional capacity. (Doc. 16). Claimant's brief, however, identifies three separate allegations of error. First, claimant asserts the ALJ erred when he improperly discounted claimant's subjective pain complaints. (Doc. 16, at 2-8). Second, claimant argues the ALJ erred when he failed to incorporate a treating physician's weight-lifting limitations in the ALJ's residual functional capacity assessment. (Doc. 16, at 8-10). Third, claimant argues that the ALJ erred in failing to incorporate absenteeism limitations in claimant's residual functional capacity assessment. (Doc. 16, at 10). I will address each of these issues in turn.

### A. *The ALJ's Credibility Determination*

Claimant argues that the ALJ's assessment of his credibility was flawed because the ALJ provided "only broad, unsupported conclusions in support of the credibility finding." (Doc. 16, at 5). Claimant also argues that in making his credibility assessment, the ALJ disregarded and misconstrued medical evidence in the record, and failed to properly evaluate facts. (Doc. 16, at 4-6). Claimant further faults the ALJ for relying on the fact that claimant had not used physical therapy and other treatment for the pain, stating "[t]hese treatments were not recommended by [claimant's] doctors and there is no evidence that they would relieve his pain or even be safe for him to use." (Doc. 16, at

8

6). Finally, claimant argues that the ALJ erred in evaluating claimant's daily activities when discounting claimant's credibility. (Doc. 16, at 6-8).

Although the ALJ found claimant's impairments to be severe, he "did not find that they were so severe as to be disabling in their nature." (AR 16). The ALJ concluded that, "[o]verall, the objective evidence did not support the claimant's allegations" regarding the amount of pain and physical limitations, noting that claimant "appeared to retain the ability to function in most respects of his day-to-day life." (*Id.*).

The ALJ reviewed in detail claimant's medical treatment from 2012 through 2014, noting a number of things the ALJ found inconsistent with claimant's description of the severity of his pain and physical limitations. (AR 16-22). The ALJ noted that claimant's elbow and neck pain existed prior to the alleged onset date, while claimant was still working. (AR 16-17). The ALJ noted that in 2013, claimant admitted he had not been taking prescribed medication—which the examiner determined was the likely cause of claimant's pain and spasticity—and claimant had been noncompliant in wearing a neck collar. (AR 17-18). The ALJ noted that at an examination two months later, claimant was again found to be noncompliant with taking his medications. (AR 18). The ALJ noted that, despite the lack of medication, claimant stated that his neck and shoulder pain had disappeared. By September 2013, the ALJ stated a doctor found claimant had a normal range of motion and his grip strength was intact. (*Id.*). The ALJ noted that before that, claimant was seen cutting down weeds without difficulty at his residence. (*Id.*).

The ALJ noted that in March 2014, claimant reported no significant pain or other health issues, his movement was not limited, and he denied any significant grip or fingering issues. (*Id.*). In May 2014, claimant was seen after the fusion of vertebrae in

9

his neck.  Although he had some limited range in his neck, he was found to have good range of motion otherwise.  (*Id.*).  The examining doctor imposed some limitations to claimant lifting above his shoulders, but the ALJ gave this little weight, finding nothing in the examination to support the limitation.  (*Id.*).  The ALJ also noted that, during this examination, claimant stated that his pain had improved as of his August 2013 surgery.  (*Id.*).

The ALJ noted, though, that by August 2014, claimant was again reporting pain in his neck and right shoulder.  (AR 18-19).  The ALJ further noted that claimant underwent surgery again and did well.  (AR 19).  By October 2014, an examination showed that claimant was doing very well, the ALJ noted, and claimant reported that his pain had been completely resolved.  (*Id.*).

The ALJ noted, finally, that as of February 2015, claimant was complaining of some right trapezius pain.  (AR 19).  Although an MRI of that area showed no hardware complications from his surgery, it did show some minimal posterior spurring at the C5 and C6 levels.  (*Id.*).  The MRI, the ALJ recognized, also showed some foraminal stenosis[5] at several levels.  (*Id.*).

A court reviews an ALJ's credibility determination through an examination of the *Polaski* factors and the mandates of SSR 14-1p.  Under the *Polaski* factors, an ALJ must consider the "claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional

---

[5] Foraminal stenosis is a narrowing of the cervical disc space.

restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [the Court] will normally defer to the ALJ's credibility determination." *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003).

In *Lowe*, the Eighth Circuit Court of Appeals stated, "[t]he ALJ was not required to discuss methodically each *Polaski* consideration, so long as he acknowledged and examined those considerations before discounting [claimant's] subjective complaints." *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) (internal citation omitted). If the ALJ gives a good reason for discrediting a claimant's credibility, then the court will defer to the ALJ's judgment "even if every factor is not discussed in depth." *Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001) (internal citation omitted). "Although the ALJ may disbelieve a claimant's allegations of pain, credibility determinations must be supported by substantial evidence." *Jeffery v. Sec'y of Health & Human Servs.*, 849 F.2d 1129, 1132 (8th Cir. 1988) (internal citation omitted). "Moreover, the ALJ must make express credibility determinations and set forth the inconsistencies in the record that lead him to reject the claimant's complaints." *Id*. "Where objective evidence does not fully support the degree of severity in a claimant's subjective complaints of pain, the ALJ must consider all evidence relevant to those complaints." *Holmstrom v. Massanari*, 270 F.3d 715, 721 (8th Cir. 2001) (internal citation omitted).

Here, the ALJ found that the medical records were inconsistent with the degree of severity of pain and limitations reported by claimant. An ALJ may properly discount subjective complaints if inconsistencies exist in the record as a whole. *Polaski*, 739 F.2d at 1322; *Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006); *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). Upon my own review of the records, I find there is

11

support for the ALJ's conclusion. The records show generally that claimant had some neck and left arm pain, but underwent several surgeries in 2013 and 2014, with normal convalescence, the results of which showed marked improvement. Although claimant still had some amount of pain in his shoulder in 2015 even after the surgeries, the ALJ did not ignore this. The ALJ found claimant had severe impairments and limited claimant's residual functional capacity to sedentary work with limitations of overhead reaching. The ALJ simply did not find that the pain and limitations were as pronounced as claimant asserted when compared against the medical evidence.

The ALJ also discounted claimant's credibility because claimant was noncompliant with taking medications and wearing a neck collar. The medical records bear this out. The case law is clear that an ALJ may consider noncompliance with medical treatment as detracting from a claimant's credibility. *See*, *e.g.*, *Wright v. Colvin*, 789 F.3d 847, 854 (8th Cir. 2015) (holding that a claimant's failure to comply with medical treatment diminished the claimant's credibility); *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010) (same); *Holley v. Massanari*, 253 F.3d 1088, 1091-92 (8th Cir. 2001) (same).

In her brief, the Commissioner stated: "[t]he ALJ noted plaintiff had observable manifestations of chronic pain, such as muscle atrophy, muscle spasms, prolonged bed rest, or neurological signs." (Doc. 17, at 10 (citing AR 20)). This is clearly a typographical error. The ALJ found just the opposite. The ALJ found claimant did not have those observable manifestations of pain. (AR 20). The Commissioner is correct, however, in noting that the absence of such objective manifestations of pain detracts from the credibility of claimant's subjective pain complaints. *Hollis v. Bowen*, 837 F.2d 1378, 1384-85 (5th Cir. 1988).

The ALJ also noted claimant did not pursue physical therapy or other methods for dealing with pain. (AR 20). The medical records again show an absence of such therapy and other methods. Claimant's retort that his doctors did not order such treatment and that there is no showing such treatment would be effective has only limited purchase. Although it is true there is no evidence in the record that claimant's doctors ordered such treatment and claimant failed to comply, the fact that claimant's doctors did not order such treatment is itself an indication that claimant's pain was not so unmanageable by medications that his treatment providers were exploring other options. Moreover, whether the methods would be successful is not the issue. What is important is that these alternative treatments were not ordered and not pursued, which raises doubts about the credibility of claimant's subjective report regarding the severity of his pain.

The ALJ also considered claimant's daily activities for the purpose of assessing claimant's credibility. *Wagner v. Astrue*, 499 F.3d 842, 851-52 (8th Cir. 2007) (noting that although a claimant need not be bedridden to be disabled, an ALJ may take into account the degree to which a claimant's daily activities are inconsistent with the alleged severity of impairments). The ALJ noted that claimant reported a very sedentary life, admitting to few activities of daily living. (AR 20). The ALJ found it significant, however, that no treatment provider diagnosed claimant with any medical reason for such limited daily activities. (*Id.*). Among the daily activities claimant did perform, the ALJ considered them inconsistent with the severity of the limitations claimant's reported. For example, the ALJ noted claimant was seen mowing weeds at his residence, and working on the ceiling of his garage. (*Id.*). The ALJ also noted that in his function report, claimant reported no issues with personal care, and that claimant went shopping and took care of pets. (AR 20, 281).

13

In his reply brief, claimant accused the Commissioner of post hoc rationalization. (Doc. 18). In other words, claimant argues that the Commissioner's brief attempts to justify the ALJ's decision based on matters the ALJ himself did not consider, and asserts there is no evidence the ALJ considered the entire record. The ALJ's decision is thorough and references the entire record; the ALJ is not required to cite every page to demonstrate a review of the entire record. There are some instances of the Commissioner relying on evidence in the record that the ALJ did not explicitly mention or rely on in reaching his conclusions.[6] In arriving at my recommendation here, however, I have considered only what the ALJ explicitly relied on in making a credibility assessment. Based on those explicit references alone, I find there is substantial evidence in the record to support the ALJ's credibility assessment.

In short, this is not a case where an ALJ made broad, vague, and conclusory findings regarding a claimant's credibility. The ALJ's basis for discounting claimant's credibility was detailed and specific, with references throughout to the record. Although the Court could reach a different credibility finding, I find there is substantial evidence in the record as a whole to support the ALJ's credibility findings in this case. Where an ALJ gives good reason for discrediting a claimant's testimony, a reviewing court should defer to the ALJ's credibility findings. *Halverson v. Astrue*, 600 F.3d 922, 931-33 (8th Cir. 2010). Accordingly, I recommend the Court find the ALJ did not err in his credibility findings.

---

[6] For example, the Commissioner cites to evidence in the record that the ALJ did not rely on: that claimant was seen entering his large garage and was suspected of working on vehicles. (Doc. 17, at 10).

### B. *The ALJ's RFC and Limitations Identified by Dr. Snyder*

Claimant alleges that the ALJ erred by failing to incorporate limitations that his treating physician, Dr. Joseph Snyder, D.O., found appropriate. (Doc. 16, at 9-10). In particular, claimant argues the ALJ should have incorporated a ten-pound weight limitation. (*Id.*).

Dr. Snyder saw claimant between November 2012 and April 2013. (AR 333, 340, 343). Dr. Snyder opined that claimant should be limited to lifting "up to 5 pounds." (*Id.*). The ALJ reviewed Dr. Snyder's records and stated he "gave much consideration to the opinion of Dr. Snyder and gave it significant weight." (AR 22). The ALJ noted that Dr. Snyder rendered his opinion, however, before the alleged onset date. (*Id.*).

"A treating physician's opinion is given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." *Goff*, 421 F.3d at 790 (citation and internal quotations omitted). But, a treating source's opinion does "not automatically control, since the record must be evaluated as a whole." (*Id.* (citation and internal quotations omitted)). Here, the ALJ gave Dr. Snyder's opinion significant weight, but because the opinion was rendered before the alleged onset of claimant's disability and before claimant underwent multiple surgeries to address his medical problems, the ALJ was justified in not including the weight limitation Dr. Snyder found appropriate at the time Dr. Snyder saw claimant. *See*, *e.g.*, *Taylor v. Astrue*, No. 10–2151, 2011 WL 6141019, at *6 (W.D. Ark. Dec. 9, 2011) (finding ALJ properly discounted treatment provider's opinions because "they are less persuasive than medical records from treating physicians *during* the relevant time period.") (emphasis in original); *Kershaw v. Astrue*, No. 2:08–CV–02147–JRM, 2010 WL 521104, at *8 (W.D. Ark. Feb. 9, 2010) (finding

15

treating physician's opinion entitled to less weight because, among other things, the physician examined the claimant before the alleged onset of the disability). Dr. Snyder's opinions as to weight limits had little relevance because claimant had undergone several successful surgeries in the meantime. Thus, an ALJ may, as here, accept some of a treating provider's limitations, but reject others that were not consistent with the rest of the record. *Choate v. Barnhart*, 457 F.3d 865, 869-70 (8th Cir. 2006).

Therefore, I find there is substantial evidence in the record as a whole to support the ALJ's exclusion of Dr. Snyder's weight limitation from the ALJ's assessment of claimant's residual functional capacity.

### C. The ALJ's RFC and Claimant's Absenteeism

Claimant argues the ALJ erred in failing to include in claimant's residual functional capacity assessment a limitation for claimant's need to "miss work more than one day per month due to his combined health problems." (Doc. 16, at 10). Claimant argues that the "[e]vidence shows that [claimant] would have problems with frequent absenteeism." (*Id.*). For support of this assertion, claimant alleges that between May 1, 2013, and December 2015, claimant attended more than 50 medical appointments. (*Id.*). Claimant argues that this would mean claimant would miss more than one day per month, and the vocational expert testified that such absenteeism would preclude employment. (*Id.*, citing AR 67).

Claimant has the burden of proving limitations. *Goff*, 421 F.3d at 793 (claimant bears the burden of demonstrating RFC limitations). Here, claimant relies on the frequency of his past medical appointments to predict his future need for absences from work. This reasoning is flawed for several reasons. First, the vocational expert's opinion was based on missing entire days; there is no support in the record for the proposition

16

that claimant would miss entire days of work to attend medical appointments. Claimant could schedule multiple medical appointments on the same day, or schedule appointments before or after his normal work hours. Moreover, the record reflects that claimant's appointments did not consume entire days. *See Mullin v. Colvin*, No. 14–3217–CV–S–REL–SSA, 2015 WL 5096028, at *14 (W.D. Mo. Aug. 27, 2015) (rejecting claimant's assertion that frequent medical appointments would require excessive absenteeism from work). Second, as noted above, claimant underwent multiple surgeries in 2013 and 2014, which the ALJ found substantially improved his medical condition. There is no support in the record, therefore, to extrapolate into the future claimant's past frequency of medical appointments. Finally, the record is unclear regarding how many of the relied-upon appointments were occasioned for purposes of worker's compensation purposes, as opposed to treatment. Again, it is the claimant's burden to show the need for additional limitations and he has failed to carry that burden here.

Therefore, I find there is substantial evidence in the record as a whole to support the ALJ's conclusion that claimant would not frequently miss entire days of work because of medical appointments.

## *VI. CONCLUSION*

For the reasons set forth herein, I find the ALJ acted well within the zone of choice within which the Commissioner may act. *Culbertson*, 30 F.3d at 939. Therefore, I respectfully recommend the District Court **affirm** the Commissioner's determination that claimant was not disabled, and enter judgment against claimant and in favor of the Commissioner.

Parties must file objections to this Report and Recommendation within fourteen (14) days of the service of a copy of this Report and Recommendation, in accordance

17

with 28 U.S.C. § 636(b)(1) and FED. R. CIV. P. 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* FED. R. CIV. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the District Court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

    **IT IS SO ORDERED** this 11th day of July, 2017.

_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa